IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MIDWEST OPERATING ENGINEERS WELFARE FUND AND MIDWEST OPERATING ENGINEERS PENSION TRUST FUND, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | 14-cv-8752 |
| v. | ) ) | Judge John Z. Lee |
| ALLIED STONE, a division of RiverStone Group, Inc., an Illinois corporation, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Midwest Operating Engineers Welfare Fund and Midwest Operating Engineers Pension Trust Fund (the Funds) are employee benefit plans under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C § 1001 *et seq.* The Funds claim that Defendant Allied Stone violated § 1145 of that Act by failing to make contributions to the Funds as called for by a collective bargaining agreement. Allied contends that it was not required to make those contributions because Allied's employees had decertified the union that was a party to the collective bargaining agreement. But the Funds argue that Allied's obligation under the agreement to make contributions continued even after the union's decertification. The parties have filed cross motions for summary judgment.

Two cases nearly identical to this one—*Midwest Operating Engineers Welfare Fund v. Cleveland Quarry*, 40 F. Supp. 3d 1033, 1034 (N.D. Ill. 2014), and *Midwest Operating Engineers v. Cordova Dredge*, No. 15 C 4446, 2015 WL 7731868 (N.D. Ill. Dec. 1, 2015)—were recently decided in this district and are currently on appeal. The Funds were also the plaintiffs in those cases, and all three defendants (Allied, Cleveland Quarry, and Cordova Dredge) are

quarries that are owned and operated by one company, RiverStone Group, Inc. Additionally, the same union represented the employees at each quarry, and each quarry's employees eventually decertified that union, though at different times. Finally, the collective bargaining agreements involved in those cases and this one are identical except that they cover different groups of employees during different time periods. These three cases also present precisely the same legal questions, and in both *Cleveland Quarry* and *Cordova Dredge*, judgment was entered in favor of the Funds.

The Seventh Circuit has consolidated *Cleveland Quarry* and *Cordova Dredge* on appeal. *See Midwest Operating Engineers et al v. Cordova Dredge*, No. 15-3861, Doc. 2 (7th Cir. Dec. 30, 2015). The appellate court has also stayed briefing in those cases until judgment has been entered in this case and the losing party has appealed, at which time all three cases will be consolidated. *Id.* at Doc. 6 (Feb. 19, 2016). As explained below, the Court agrees with the reasoning in *Cleveland Quarry* and *Cordova Dredge*; thus, Defendant's motion for summary judgment is denied, and Plaintiffs' is granted.

**I. Factual Background**

Allied Stone, a division of RiverStone Group, Inc., operates a quarry in Milan, Illinois. Def.'s SOF ¶ 1. In 2010, Allied entered into a collective bargaining agreement with the International Union of Operating Engineers, Local 150, AFL-CIO ("Local 150"). The agreement was to be effective for five years, from May 3, 2010 until May 3, 2015. *Id.* ¶ 2. Articles 8 and 21 of the Agreement required Allied to make contributions to the Funds. Def.'s SOF ¶ 3. Article 8 reads in part:

> It is understood and agreed that there shall be an insurance plan known as the Midwest Operating Engineers Welfare Fund, and the Employer shall make the following contributions for each hour for

> which an employee receives wages under the terms of this Agreement . . .

Def.'s SOF, Ex. A, Collective Bargaining Agreement (CBA), at 12. Article 21 specifies:

> It is understood and agreed that there shall be continued a Trusteed Pension Plan known as the Midwest Operating Engineers Pension Fund, and the Employer will contribute the sum of $4.40 per hour for each hour for which an employee receives wages under the terms of this Agreement to the Midwest Operating Engineers Pension Fund.

*Id.* at 24.

Allied made the agreed contributions to the Funds for more than four years. Def.'s SOF ¶ 3. Then, in August 2014, a majority of Allied's employees elected not to be represented by Local 150 anymore, and the following month the National Labor Relations Board found that the union, because it lacked majority support, would be decertified. *Id.* ¶¶ 11–12. Allied informed the Funds of the decertification by letter, and in the same letter asserted that Allied's obligation to continue making contributions had ceased. *Id.* at ¶ 13.

Allied made no contributions to the Funds for any work performed after September 4, 2014. *Id.* ¶ 14. In response, the Funds filed this action under 29 U.S.C. § 1145, demanding back payments and damages from September 2014 until May 3, 2015, the date the collective bargaining agreement was set to expire.

## II. Legal Standard

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden rests on the moving party to show that there are no genuine issues of material fact. *Celotex Corp. v Catrett*, 477 U.S. 317, 322 (1986). "To survive summary judgment, the nonmoving party must establish some general issue for trial such that a reasonable

3

jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). To determine this, a court should "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' statements." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000).

## II. Analysis

**A. Preclusion**

The Funds, invoking the doctrines of claim preclusion (*res judicata*) and issue preclusion (collateral estoppel), first argue that Judge Shadur's opinion in *Cleveland Quarry* has preclusive effect in this case.[1] Pls.' Resp. Br./Mem. Supp. at 2–5. "The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008).

**1. Claim Preclusion**

Claim preclusion has three elements under federal law: "a final decision in the first suit; a dispute arising from the same transaction (identified by its operative facts); and the same litigants (directly or through privity of interest)." *Czarniecki v. City of Chi.*, 633 F.3d 545, 548 (7th Cir. 2011). To satisfy the second element, the final judgment must be "based on the same cause of action," as determined by the "same transaction test." *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir. 1986). A "cause of action" comprises "a single core of operative facts." *Id.* at 593 (citations omitted). To determine the existence of this "single core," the court analyzes "whether these claims are part of the same cause of action which spawned the earlier . . . claim." *Id.* at 595. The party asserting claim preclusion carries the burden of establishing its elements. *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008).

---

[1] The Funds do not make the same argument about Judge St. Eve's opinion in *Cordova Dredge*, which was issued after the briefs in this case were filed. The Funds submitted *Cordova Dredge* as supplemental authority, but they did not seek leave to file supplemental briefing on the case's potential preclusive effect.

As an initial matter, the Funds' attempt to invoke claim preclusion offensively is highly unusual. Claim preclusion is typically a defensive doctrine that bars a party from asserting claims that were brought or could have been brought in a previous case. *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 476 (1998). Put differently, "[u]nder the doctrine of *res judicata*, a judgment on the merits in a prior suit bars a second suit involving the same parties or their pivies based on the same cause of action." *Parkline Hosiery Co., Inc., v. Shore*, 439 U.S. 322, 326 n.5 (1979). Here, the doctrine of claim preclusion, if it were to apply, would prohibit the Funds from (re)litigating its claims against Allied in this case. It is safe to assume, however, that the Funds are not seeking such a result, but rather are invoking the more general formulation that "[u]nder *res judiciata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allied v. McCurry*, 449 U.S. 90, 94 (1980).

In any event, because the claims in this case are not based on the same operative facts that spawned the Funds' claims in *Cleveland Quarry*, the doctrine of claim preclusion does not apply here. The collective bargaining agreement at issue in *Cleveland Quarry*, though nearly identical to the agreement in this case, is nevertheless a separate agreement. The two agreements covered different employees at different quarries in different towns. Furthermore, Local 150 was decertified at Cleveland Quarry in September 2013, *see Cleveland Quarry*, 40 F. Supp. 3d at 1034, but the union was not decertified at Allied until a full year later. And Allied stopped making contributions to the Funds on behalf of its employees well after Cleveland Quarry had stopped, meaning that the two claims under § 1145 arose at different times. Under these circumstances, the dispute in *Cleveland Quarry* can not be said to be based on the "same transaction" as the dispute in this case. *See Cordova Dredge*, No. 15 C 4446, 2015 WL 7731868

5

at *10 (rejecting the Funds' claim preclusion argument); *Chi. Reg'l Council of Carpenters v. Prate Installations, Inc.*, No. 10 C 5431, 2011 WL 336248, at *5 (N.D. Ill. Jan. 31, 2011) (concluding that a claim based on one collective bargaining agreement was not precluded by an earlier claim based on another collective bargaining agreement); *Clarke Const. Grp., Inc. v. Levy Co.*, No. 97 C 0716, 1997 WL 116844, at *4 (N.D. Ill. Mar. 12, 1997) (explaining that a decision on one breach of contract would not preclude claim for a separate breach of the same contract in another case).

### 2. Collateral Estoppel (Issue Preclusion)

Plaintiffs' reliance on the doctrine of issue preclusion makes more sense. Issue preclusion, which prevents the relitigation of issues resolved in an earlier dispute, can be invoked offensively, *Allen v. McCurry*, 449 U.S. at 94–95, and the following elements must be satisfied for the doctrine to apply:

> (1) the issue sought to be precluded is the same as an issue in the prior litigation, (2) the issue must have been actually litigated in the prior litigation, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must have been fully represented in the prior action.

*Matrix IV, Inc. v. Am. Nat. Bank & Trust Co. of Chicago*, 649 F.3d 539, 547 (7th Cir. 2011). The party invoking issue preclusion bears the burden of establishing that the doctrine applies. *A.J. Canfield Co. v. Vess Beverages, Inc.*, 859 F.2d 36, 37 (7th Cir. 1988).

The Funds' two-paragraph issue preclusion argument, however, is cursory at best. Pls.' Resp. Br./Mem. Supp. at 4–5. They do not even lay out the elements that must be satisfied for the doctrine to apply, nor do they bother to specify what issue or issues are precluded. And they certainly have not identified an analogous case or any other authority to support their theory that an earlier decision in a breach of contract case precludes a later determination regarding a

separate, although nearly identical, contract. Judge St. Eve considered nearly identical briefing on this issue in *Cordova Dredge*. 2015 WL 7731868 at *8. As she found in that case, the Funds also have failed to establish that the doctrine of issue preclusion applies here. *See id.*

**B. Merits**

As for the merits, the Court agrees with the reasoning set forth in Judge Shadur's opinion in *Cleveland Quarry* and Judge St. Eve's opinion in *Cordova Dredge*. Given this agreement—and the impending consolidation on appeal of this case with those cases—the Court believes that this opinion can be most useful by providing a supplemental discussion of *Central States, SE & SW Areas Pension Fund v. Schilli*, 420 F.3d 663 (7th Cir.2005), the case upon which both the Funds and Allied rely. But some background is in order before turning to *Schilli*.

The Funds in this case are suing Allied under 29 U.S.C. § 1145, which provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

As the Seventh Circuit explained in *Central States, Southeast & Southwest Areas Pension Fund v. Gerber Truck Service, Inc.*, 870 F.2d 1148, 1151–53 (7th Cir. 1989) (en banc), § 1145 provides ERISA funds with a way to enforce an employer's contribution obligations even when the union itself does not have the power to enforce the agreement that created the obligation. Without § 1145, ERISA funds would find themselves "in a bind" because "they must pay even if the contributions they expected to receive do not materialize." *Id.* at 1151. And "[i]f some employers do not pay, others must make up the difference in higher contributions, or the workers will receive less than was promised." *Id.*

The court in *Gerber Truck* also explained that, even before the enactment of § 1145, the Supreme Court had held in *Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 469–71 (1960), that a

7

union's breach of a collective bargaining agreement would *not* relieve an employer of its obligation to make fund contributions. *Id.* at 1145. Despite *Lewis*, however, employers had continued arguing with some success that "defenses to the formation of the contract" would relieve them of the duty to contribute. *Id.* For example, the court in *Washington Area Carpenters' Welfare Fund v. Overhead Door Co.*, 488 F.Supp. 816, 819 (D.D.C. 1980), held that an employer was not obliged to make fund contributions it had agreed to in a "pre-hire" collective bargaining agreement, explaining that the agreement was unenforceable because the union did not ultimately garner majority support. Congress passed § 1145 explicitly to put to bed the holdings of *Overhead Door* and similar cases. 870 F.2d at 1153.

Although *Gerber Truck* did not involve a union that had been decertified, it did involve a union that lacked majority support, meaning that the union was unable to enforce the collective bargaining agreement. *Id.* at 1150. The Seventh Circuit, in siding with the fund, explained that "nothing in ERISA makes the obligation to contribute depend on the existence of a valid collective bargaining agreement; the repudiation of cases such as *McDowell* and *Overhead Door* shows the opposite." *Id.* at 1153.

The Seventh Circuit, however, did not have occasion to specifically address whether an employer's obligation to contribute to an ERISA fund survived a union's decertification until *Central States, SE & SW Areas Pension Fund v. Schilli*, 420 F.3d 663 (7th Cir. 2005). In *Schilli*, the employer had entered into a collective bargaining agreement with the union and had also entered into a "participation agreement" with the union that required the employer to make contributions to an ERISA fund "for its bargaining unit Employees pursuant to the terms of the collective bargaining agreement." *Id.* at 665. The participation agreement would "continue in full force and effect until such time as the Employer notifies the Fund(s) by certified mail (with a

copy to the Local Union) that the Employer is no longer under a legal duty to make contributions to the Fund(s)." *Id.* at 665–66. The union was decertified in 1997, which was before the collective bargaining agreement expired.

But *Schilli*, unlike *Gerber Truck* and this case, did not involve an ERISA fund suing an employer under § 1145 for delinquent contributions. The employer in *Schilli* actually kept making contributions to the fund after the union was decertified. *Id.* at 666. Rather, the fund in *Schilli* was seeking to establish that the employer was liable for a "partial withdrawal," which would entitle the fund to payment under 29 U.S.C. § 1385. *Id.* at 666–67. An employer is considered to have partially withdrawn if there has been a "partial cessation of the employer's contribution obligation" to the fund. 29 U.S.C. § 1385(a)(2). The employer in *Schilli*, taking a position opposite to Allied's position in this case, argued that it had remained obligated to make contributions to the fund after the union's decertification (and thus had not withdrawn). *Id.* at 668. And the fund in *Schilli*, unlike the Funds in this case, insisted that the union's decertification had ended the employer's contribution obligation. *Id.*

The Seventh Circuit framed the question in *Schilli* as "whether decertification is a defense in a § 1145 action." *Id.* at 670. "If so," the fund "could not have prevailed against [the employer] for contributions after the union's decertification, and [the employer] ceased having an 'obligation to contribute' for withdrawal liability purposes at that point." *Id.*

Acknowledging that other circuits had suggested or held that decertification is a defense to a § 1145 action, *see, e.g.*, *La. Bricklayers & Trowel Trades Pension Fund & Welfare Fund v. Alfred Miller Gen. Masonry Contracting Co.*, 157 F.3d 404, 408 (5th Cir. 1998); *Agathos v. Starlite Motel*, 977 F.2d 1500, 1505 (3d Cir. 1992); *Sheet Metal Workers' Int'l Ass'n, Local 206*

9

*of Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. W. Coast Sheet Metal Co.*, 954 F.2d 1506, 1509–10 (9th Cir. 1992), the Seventh Circuit nonetheless found that it is not:

> Neither *Gerber Truck, Moriarty*, nor *Martin* squarely addressed the decertification of a union. Nevertheless, these cases reveal that a union's lack of majority support or authority to collectively bargain, standing alone, will not preclude liability under § 1145. As explained above, a union loses its rights upon decertification because it no longer enjoys majority support or the authority to represent the bargaining unit. *Because the decertification defense rests on these rationales, we hold that it does not serve as a categorical bar to § 1145 liability.*

*Schilli*, 420 F.3d at 671 (emphasis added). The Seventh Circuit went on to hold that the employer in that case "remained obligated to contribute to [the fund] until it complied with the notice provision of the Participation Agreement." *Id.* at 673.

In this case, the Funds focus on *Schilli*'s holding that decertification, in and of itself, is not a bar to liability under § 1145. Allied, however, points to the role in *Schilli* of the participation agreement and its notice provision, arguing that *Schilli* does not apply unless there is a separate participation agreement like the one in that case. The parties agree that there was no separate participation agreement between Allied and Local 150.

The Court concludes that Allied's focus on the participation agreement is misplaced. First, nothing in *Schilli* suggests that a participation agreement that is included within a collective bargaining agreement—which is what we have in this case—should be treated any differently from a participation agreement executed in a separate document between the same parties. Second, the *Schilli* court addressed the notice component of the participation agreement only to counter the fund's argument that the terms of the participation agreement caused the employer's contribution obligation to cease; the court did not hold that the employer would not

have been obligated to contribute after decertification if not for the notice requirement. *Id.* at 672.

Admittedly, the statement in *Schilli* that the employer "remained obligated to contribute to [the fund] until it complied with the notice provision of the Participation Agreement," *id.* at 673, is somewhat perplexing taken alone. Allied understands the statement to mean that the notice provision—under which the employer's contribution obligation continued until the employer provided notice that it was "no longer under a legal duty to make contributions"—was the only thing requiring the employer in *Schilli* to continue making contributions, meaning that decertification had terminated the employer's "legal duty" and all that remained was to notify the fund under the participation agreement. But the Court, after considering the *Schilli* opinion as a whole, does not understand the statement to mean that the union's decertification terminated the employer's legal duty to contribute were it not for the participation agreement. Such an understanding would conflict with *Schilli*'s holding that decertification alone is not a defense to an action under § 1145. In context, the statement is better understood as meaning simply that the employer in *Schilli* was on the hook for contributions until it provided notice to the fund under the participation agreement that its legal duty to contribute had ceased, understanding that decertification had not resulted in a cessation of that duty.

In short, Allied needs to point to something more than Local 150's decertification to establish that it was no longer obliged under § 1145 to contribute to the Funds, and it does make two other arguments in support. But the Court rejects these arguments for the reasons given in *Cleveland Quarry* and *Cordova Dredge*.

The first argument is that the terms of the collective bargaining agreement itself relieved Allied of the obligation because, under the agreement, contributions to the funds are to be based

11

on an employee's "wages under the terms of this Agreement," and no employee was working under the terms of the agreement after decertification. Def.'s Mem. Supp. at 10–11. Judge Shadur convincingly dismantles this argument in *Cleveland Quarry*, showing that to accept it would be to gut § 1145 of any force. 40 F. Supp. 3d at 1036–38.

Allied's other argument is that it would have been illegal for it to continue making contributions to the Funds after Local 150's decertification. Def.'s Mem. Supp. at 11–15. Allied relies on 29 U.S.C. § 186, which prohibits employers from making certain payments but allows payments "to a trust fund established by [a] representative." According to Allied, payments to such a fund are illegal following a union's decertification because the union is no longer the employees' representative. Judge St. Eve soundly rejected this argument in *Cordova Dredge*, explaining that that statute "speaks against this interpretation with its explicit reference to the representative status as important for the establishment of the trust fund, not as important for the continued payments into the trust fund." No. 15 C 4446, 2015 WL 7731868, at *14.

## IV. Conclusion

For the reasons stated herein, Allied's motion for summary judgment [16] is denied, and the Funds' motion for summary judgment [25] is granted.

**IT IS SO ORDERED.**                    ENTERED 3/30/16

                                                                    _____
                                                                    **John Z. Lee**
                                                                    **United States District Judge**